IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GUILLERMO DE JESUS HERNANDEZ MURALLES,<br><br>        Petitioner,<br><br>    v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement; TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; DAVID EASTERWOOD, in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement; KEVIN DARLING, in his official capacity as Sheriff of Red Willow County; and WARDEN of the McCook County Detention Facility,[1]<br><br>        Respondents. | **4:26CV3079**<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion to Dismiss (Filing No. 13) petitioner Guillermo de Jesus Hernandez Muralles's ("Hernandez Muralles") Verified Petition for Writ of Habeas Corpus (Filing No. 1) for mootness, *see* Fed. R. Civ. P. 12(b)(1), filed by respondents Markwayne Mullin, Secretary of the Department of Homeland Security; Todd Lyons, Acting Director of the United States Immigration and Customs Enforcement ("ICE"); Todd Blanche, Acting Attorney General of the United States; and David

---

[1]Markwayne Mullin was sworn in March 24, 2026, and is automatically substituted for his predecessor, Kristi Noem. *See* Fed. R. Civ. P. 25(d). Todd Blanche, the Acting Attorney General of the United States, is likewise substituted for his predecessor, Pamela Bondi. *See id.* The Clerk of Court is directed to make those changes on the docket sheet.

Easterwood, Acting Director of Saint Paul Field Office for ICE (together the "federal respondents"). For the reasons described below, the federal respondents' motion is granted.

## I.    BACKGROUND

Hernandez Muralles is a citizen and national of Guatemala. He applied for admission into the United States at Nogales, Arizona, on October 1, 2023, without a valid immigrant visa, reentry permit, border crossing card, or other valid entry document. He was paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5). That same day, he was personally served with a Notice to Appear ("NTA") which began his removal proceedings and charged him as inadmissible under INA section 212(a)(7)(A)(i)(I), 8 U.S.C.§ 1182(a)(7)(A)(i)(I).

On December 12, 2025, ICE officers detained Hernandez Muralles in St. Paul, Minnesota, during targeted enforcement activities. Because Hernandez Muralles qualifies as an "applicant for admission"—an "alien present in the United States who has not been admitted," 8 U.S.C. § 1225(a)(1), they detained him without a bond hearing under § 1225(b)(2)(A).

On March 2, 2026, an immigration judge ("IJ") ordered Hernandez Muralles removed to Guatemala and denied him all forms of relief (Filing No. 15-3). Three days later, he filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241. His petition states he is physically detained at the McCook Detention Center in McCook, Nebraska, *see Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004), and asserts six grounds for relief. Each ground is premised on his belief that he may only be detained under 8 U.S.C. § 1226.

Hernandez Muralles did not appeal his removal order within the time permitted, so it is now final. *See* 8 C.F.R. § 1003.39 (explaining that an IJ's removal order "becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first"); *id.* § 1003.38.

2

## II.     DISCUSSION

The federal respondents then moved to dismiss Hernandez Muralles's petition based on mootness.  In their view (Filing No. 16), it is moot because his removal order is final and he is now mandatorily detained under 8 U.S.C. § 1231, not § 1225(b)(2) or even § 1226(a) as he alleges.  In support of their motion to dismiss, they have provided a sworn declaration by a deportation officer familiar with Hernandez Muralles's case; a copy of his NTA; his Form I-200 "Warrant for Arrest of Alien"; and a copy of the IJ's written opinion ordering his removal (Filing No. 15).

### A.     Mootness

"Two varieties of mootness exist: Article III mootness and prudential mootness." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005).  Article III mootness arises from the United States Constitution's case and controversy requirement.  *Id.*; *see* U.S. Const. art. III, § 2, cl. 1.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Davis v. Morris-Walker, LTD*, 922 F.3d 868, 870 (8th Cir. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  "The "test for mootness . . . is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]"  *Lang v. Soc. Sec. Admin.*, 612 F.3d 960, 966 (8th Cir. 2010) (quoting *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990)).  "[I]t is cases rather than reasons that become moot."  *Air Line Pilots*, 897 F.2d at 1397.  If a case is moot in the Article III sense, the Court must dismiss the action for lack of subject matter jurisdiction.  *See Ali*, 419 F.3d at 724 (citing *Powell v. McCormack*, 395 U.S. 486, 496 n.7 (1969)).

But even when a case is not constitutionally moot, the Court may treat a case as moot for prudential reasons.  *See Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1045 (8th Cir. 2022).  A court may dismiss a case for prudential mootness when it can no longer "give an effective remedy under the circumstances now developed" or when "supervening events" have "substantially altered" a "difficult and sensitive constitutional issue" so that deciding

3

the case on the merits would be imprudent. *Ali*, 419 F.3d at 725 (Lay, J. concurring in part) (quoting *United States v. (Under Seal)*, 757 F.2d 600, 603 (4th Cir. 1985)).

The relief Hernandez Muralles ultimately seeks is release from custody. *See DHS v. Thuraissigiam*, 591 U.S. 103,  119 (2020) (noting "[h]abeas is at its core a remedy for unlawful executive detention") (alteration in original).  While the Court agrees with the federal respondents that Hernandez Muralles's legal arguments are no longer apposite, he remains detained and has not obtained any of the requested relief.  He "was in custody when he filed his application for a writ of habeas corpus," and the Court is not persuaded that a change in legal justification for his detention "automatically moot[s]" his habeas petition in the Article III sense. *Ali*, 419 F.3d at 724; *cf. id.* at 723-24 (concluding that an alien detainee's § 2241 habeas petition was not "moot in the Article III sense" even though he had been released from custody and had "arguably received the relief he requested" but finding it was prudentially moot "in light of the myriad of uncertainties in this case"); *Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002) (explaining that a habeas petition should not be dismissed due to Article III mootness if "secondary or 'collateral' injuries survive after resolution of the primary injury").

The Court finds Hernandez Muralles's habeas petition "is prudentially moot in light of the myriad of uncertainties in this case." *Ali*, 419 F.3d at 724.  Hernandez Muralles was ordered removed on March 2, 2026, and that order became final upon the expiration of the thirty-day window to appeal.  *See* 8 C.F.R.§ 1003.39.  He is now mandatorily detained under § 1231(a)(2)(A).  While the legal arguments raised in Hernandez Muralles's petition are no longer applicable, the Court cannot go so far as to say the relief sought would make "no difference" to the legal interests of the parties.  *See Lang*, 612 F.3d at 966.  But "under the circumstances now developed" the Court is not in a position "to give an effective remedy," *Ali*, 419 F.3d at 725, because the Court cannot say his detention under § 1231(a)(2)(A) is unlawful at this point, *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

### B.    Remaining Arguments

In his response (Filing No. 17), Hernandez Muralles concedes that his removal order is final, and his detention is now mandatory under 8 U.S.C. § 1231. *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). Rather than addressing the federal respondents' mootness claim in any way, he dubiously requests a stay of his habeas proceedings "until the removal period has ended." *See id.* § 1231(a)(1)(A) (defining the "removal period" as the ninety days after a removal order becomes final, during which the Attorney General "shall" detain and remove the alien). Then, he explains, "if he remains detained at the end of the removal period" he will "renew his motion for an order to show cause" and "again seek his release" based on "a change in circumstances."[2]

This request presents a self-fulfilling prophecy. The government has paused scheduling Hernandez Muralles's removal to Guatemala pending the resolution of his habeas case (Filing No. 5). A stay until the removal-period clock runs out would only place the federal respondents in a legal conundrum and prolong the very detention Hernandez Muralles alleges is unlawful. The purpose of habeas "is to secure release from custody," not to seek release into the interior of the country. *Thuraissigiam*, 591 U.S. at 118-19. The Court will not stay this matter and prolong his detention solely to allow that detention to lapse into a status he may later challenge on different grounds.

Starkly switching gears, Hernandez Muralles also raises a new—and premature—argument that § 1231 "is not a blank check for the Federal Respondents to detain him indefinitely."[3] Stopping short of claiming *he* is being held indefinitely, Hernandez Muralles summarizes the "limitations on indefinite post-removal order detention in

---

[2]Presumably, the "change in circumstances" would be that his detention has now become unlawful because it surpasses the statutory ninety-day removal period in § 1231.

[3]Hernandez Muralles also claims that on April 7, 2026, the government took him to a new correction center, "chained [him] up with no food," and told him "he could not be deported." Habeas is not the appropriate vehicle to challenge conditions of confinement. *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014).

*Zadvydas*." But as he necessarily concludes, "[a]fter entry of a final removal order and during the 90–day removal period, [Hernandez Muralles] must be held in custody." *Zadvydas*, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(2)). And even after the that period ends, "the Government 'may' continue to detain" him if he remains in the country. *Id.*

Hernandez Muralles's removal order became final on April 2, 2026. *See* 8 U.S.C. § 1231(a)(1)(B)(i). As of the date of this order, the ninety-day statutory period under § 1231(a) has not expired, let alone the presumptively constitutional six-month period contemplated by *Zadvydas*. And there is no indication whatsoever that Hernandez Muralles's removal is no longer reasonably foreseeable.[4]

Instead of disputing that his present detention is lawful, Hernandez Muralles implores the Court to cast a critical eye at his previous detention since December 2025. He claims the "vast majority of that detention has been under dubious legal authority." Time has not been kind to that assertion. While his arguments about being detained under the wrong statute and being entitled to a bond hearing may have held some sway when made, the Eighth Circuit's recent decision in *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026) forecloses those arguments. *See Avila*, 2026 WL 819258, at *6 (holding that aliens who are "applicants for admission" under 8 U.S.C. § 1225(a) are also "seeking admission" and thus subject to mandatory detention under § 1225(b)(2)(A)).[5]

---

[4]*Zadvydas* dealt with two aliens who were detained for years awaiting their removal. *See Zadvydas*, 533 U.S. at 684-86 (explaining that one detainee's home country lacked a repatriation agreement with the United States, while the other's country of birth refused his return). With no "reasonably foreseeable" path for removal, their detention had become "indefinite and potentially permanent." *Id.* at 698. Nothing in this record suggests Hernandez Muralles's detention has become "indefinite and potentially permanent." *Id.*

[5]Hernandez Muralles's simplistic assertion that the only thing he "shares in common with Mr. Avila is that he too is a Hispanic male" is demonstrably false (Filing No. 12). The Court understands Hernandez Muralles was paroled into the country while the petitioner in *Avila* entered the United States without inspection twice, but the Eighth Circuit gave no import to those facts—only briefly mentioning them once in the introductory paragraph and omitting them from its detailed analysis entirely. *See Avila*, 2026 WL 819258, at *2-6.

6

He continues to claim that his prior detention under § 1225(b) was unlawful because he is not a flight risk or dangerous. Those arguments are unpersuasive. *See Mendez Leiva v. Berg*, No. 4:26CV3023, 2026 WL 948430, at *2-5 (D. Neb. Apr. 8, 2026). And as the federal respondents point out, they are no longer relevant.

While the Court understands that Hernandez Muralles would like to remain in the United States, it declines to prolong these proceedings to facilitate a subsequent habeas challenge. Such tactical delay is inconsistent with the INA and the purpose of habeas corpus. *See Thuraissigiam*, 591 U.S. at 118-19. Accordingly,

IT IS ORDERED:

1.  The federal respondents Motion to Dismiss (Filing No. 13) based on mootness is granted for the reasons described herein.

2.  Hernandez Muralles's Verified Petition for Habeas Corpus (Filing No. 1) is dismissed without prejudice.

3.  A separate judgment will issue.

Dated this 17th day of April 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

---

Nothing in that case remotely gives them the import Hernandez Muralles inaptly assigns. Crucially, both parolees and those who enter without inspection are defined by statute as "applicants for admission" because they have "not been admitted." 8 U.S.C. § 1225(a); *accord id.* § 1101(a)(13)(B). That is something he shares in common with Mr. Avila. And it is crucial to the rule of decision in *Avila*: "the text here is clear that an 'applicant for admission' is also an alien who is 'seeking admission'" under § 1225(b)(2)(A), and thus subject to mandatory detention. *Avila*, 2026 WL 819258, at 6.